UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br><br>v.<br><br>RAYMOND ASSELIN SR., et al.<br><br>        Defendants | CRIMINAL ACTION No. 04-30033-MAP |

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT MARIA SERRAZINA'S MOTION TO SEVER

I. INTRODUCTION

The United States has brought a broad, wide-reaching 122-count Superseding Indictment ("indictment") against thirteen defendants. The 122 counts range from racketeering involving bribery, kickbacks and illegal gratuities valued at over five million dollars, to witness tampering, to schemes to defraud the voters of the Commonwealth of Massachusetts, to income tax evasion, to counts charging individuals with receiving the benefits of illegal gratuities. The 148-page indictment alleges five separate conspiracies, with 248 separate acts of racketeering and 29 unindicted co-conspirators.[1] The government estimates the trial will last four months.

---

[1] The 29 unindicted co-conspirators were identified in William M. Welch's February 2, 2005 supplemental automatic discovery letter.

1

Viewed in the scope of this massive indictment, Ms. Serrazina is a minor figure.[2] She is charged in only six of the 122 counts, and named in just four of the 248 racketeering acts. The combined value of the five items she is alleged to have received with the knowledge they were illegal gratuities (which are the basis for five of the six counts with which she is charged) is under $10,000.00.[3] In short, the acts with which she is charged pale in comparison to the scope and magnitude of the remaining counts in the indictment.

Accordingly, pursuant to Fed. R. Crim. P. 14, the defendant Maria Serrazina has moved to sever her trial. The legal bases for Ms. Serrazina's motion are twofold: (1) essential exculpatory testimony by co-defendant(s) is only available to Ms. Serrazina if she is tried separately from those co-defendant(s), and (2) her alleged culpability is sufficiently different compared to the

---

[2] The government has identified her as the least culpable of the thirteen defendants (in a June 29, 2005 letter, William M. Welch II found Ms. Serrazina had the lowest offense level under the Sentencing Guidelines of the thirteen defendants).

[3] The items are: (1) a stove and refrigerator, valued at $2,730.00 (Count 38), (2) an alarm system with an estimated value of $2,000.00 (Count 81), (3) a porch roof with an estimated value of $2,000.00 (Count 36), (4) a $137.52 service charge (Count 85, Count 1, Racketeering Act 196), and (5) an unknown amount of automotive work (Count 78). (It is impossible to know the amount of the automotive work Ms. Serrazina allegedly received, since the indictment does not break down the work by person, date or type of vehicle. The indictment simply states at least $46,723.99 worth of automotive work was done for Asselin or Sotirion family members over a ten-year period from 1993 to 2003.) Ms. Serrazina is also charged with one count of obstruction of justice (Count 103).

2

massive scope of fraud set forth in the indictment that the threat of spillover prejudice renders a fair and impartial verdict impossible for Ms. Serrazina in a thirteen-defendant, four-month trial.

The facts relevant to each of these two grounds are set forth below.

II. FACTS RELEVANT TO THE MOTION TO SEVER BASED ON ESSENTIAL EXCULPATORY EVIDENCE

1. The most serious charge against Ms. Serrazina is Count 103, alleging that she allowed Raymond Asselin Sr. and Raymond Asselin Jr. to move a briefcase, containing approximately $240,000.00 in cash, from Raymond Asselin Jr.'s house to her home at 140 Salli Circle, Ludlow, Massachusetts (Ind., p. 123).[4]

2. The briefcase containing the cash was seized pursuant to a search warrant of Ms. Serrazina's residence executed by the FBI on September 12, 2002.

3. The FBI found the briefcase in a storage area in the attic of the residence with other suitcases.

4. At the time that the briefcase was seized, Ms. Serrazina immediately denied to the FBI any knowledge of the briefcase or its contents.

5. Her denial is consistent with a conversation secretly recorded by the FBI between Raymond Asselin Jr. and his wife Lisa

---

[4] Ms. Serrazina resided in the house with her two young children. Her husband Jack Serrazina had suddenly died in 2001 from an unusual vascular immune disease.

3

Asselin. In that conversation, Raymond Asselin Jr.: (a) admitted that he and his father had placed the briefcase containing the cash in Ms. Serrazina's house, but (b) further stated in response to a direct question from Lisa Asselin (who, at the time, was wired and cooperating with the FBI) that he had never told Ms. Serrazina that the briefcase was in her house and, to the best of his knowledge, she had no idea, prior to its seizure, that it was in her house.

6.  Ms. Serrazina's defense at trial will be a lack of knowledge that the briefcase and/or its contents were in her home.

7.  The case against Ms. Serrazina would appear to be a circumstantial case, based primarily, if not exclusively, on Ms. Serrazina's ownership of the premises in which the briefcase was found.

8.  Affidavit(s) from co-defendant(s), filed under seal, support Ms. Serrazina's defense that she had no knowledge of the briefcase or its contents prior to its seizure.

9.  The co-defendant(s) who have filed the affidavit(s) will testify only if tried separately from Ms. Serrazina.

III. ARGUMENT

    A.  <u>Unless the Defendant is Tried Alone in a Separate Trial, Essential Exculpatory Evidence Will be Unavailable for her Defense</u>

In <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993), the United States Supreme Court held that a defendant is entitled to a severance under Fed. R. Crim. P. 14:

4

>[i]f there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

A long-recognized basis for severance, reiterated in Zafiro, occurs when "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." Id., citing Tifford v. Wainright, 588 F.2d 954 (5th Cir. 1979). In such a case, the defendant faces the required "serious risk" that a failure to sever will prevent the jury from making a reliable judgment about his or her guilt or innocence.

This situation most frequently arises when: (a) a defendant has exculpatory testimony to offer a co-defendant, (b) is unwilling to open him or herself up to cross-examination at his or her own trial, but (c) is willing to testify at a separate trial for the co-defendant. In that situation, failure to sever the trial deprives a defendant of "a fundamental component of due process of law," that is, "the right to present a defense and call witnesses on one's behalf." Williams v. United States. 884 A.2d 587, 593 (D.C. App. Ct. 2005). A trial without the ability to exercise these fundamental rights renders it less reliable. See Zafiro, 506 U.S. at 539.

In the First Circuit, a defendant who seeks a severance based on a co-defendant's testimony first has the burden of demonstrating four factors known as the "'first tier' Drougas factors." United

5

States v. Smith, 46 F.3d 1223, 1231 (1st Cir. 1994), citing United States v. Drougas, 748 F.2d 8, 19 (1st Cir. 1984). These factors are:

> (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the codefendant will in fact testify if the cases are severed.

Smith, 46 F.3d at 1231. Then, if the defendant satisfies the "first-tier factors," the court is instructed to:

> (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) consider whether the testimony would be subject to substantial, damaging impeachment; (3) assess the counter arguments of judicial economy; and (4) give weight to the timeliness of the motion.

Id. These are the "'second-tier' Drougas factors." Id.

1. **The testimony of the co-defendants meets the first-tier Drougas factors**

In this case, the co-defendant(s)' affidavit(s) state a willingness, if their cases are severed from Ms. Serrazina's, to testify that Ms. Serrazina: (a) did not know the briefcase in question was going to be placed in her attic prior to its being placed there, and (b) was not informed of the briefcase or its contents after it was placed in the attic. The testimony of the co-defendant(s) will directly contradict the evidence against her. See United States v. Cobb, 195 F.2d 1193, 1197-1200 (11th Cir. 1999) (noting that defendant's need for co-defendant's testimony was clear, as it would have contradicted the only evidence against

6

him). Moreover, the only way that she will obtain their testimony is if she receives a separate trial.

The affidavit(s) also state that the co-defendant(s) will testify that Ms. Serrazina was told that the alleged illegal gratuities she received were legitimate family gifts. This testimony, too, is highly exculpatory, since it shows that Ms. Serrazina did not knowingly take part in the conspiracies alleged in Counts 3 and 85, or the schemes alleged in Counts 13, 35 and 36. See United States v. Josleyn, 99 F.3d 1182, 1190 (1st Cir. 1996) (noting that 18 U.S.C. §371 requires a tacit agreement to commit a federal offense); United States v. Alzanki, 54 F.3d 994, 1003 (1st Cir. 1995) (noting that 18 U.S.C. §371 requires that the conspirators have "requisite criminal intent"). Accordingly, the co-defendant(s)' affidavit(s) plainly satisfy the first-tier Drougas factors.

    2.  **The second-tier Drougas factors do not militate against severance in this case**

The first factor of the second-tier Drougas factors is whether the co-defendant(s)' testimony is significant in relationship to the defendant's theory of defense. Here, that factor strongly militates in favor of severance. The co-defendant(s)' testimony is more than significant--it is crucial to Ms. Serrazina's theory of defense. A second factor, timeliness, also supports severance. By filing the motion to sever more than nine months prior to trial, the defendant has given the Court ample time, if it determines that

7

severance is appropriate, in which to separate counts and schedule different trials without prejudice to any party. Third, the testimony of the co-defendant(s) will not be subject to substantial damaging impeachment on the issues to which they will testify. Fourth and finally, judicial economy does not tilt the scales against severance. Judicial economy, although important, "is obviously not dispositive" of a severance motion. Smith, 46 F.3d at 1231. But more importantly, because the vast majority of the counts and acts alleged in the indictment do not involve Ms. Serrazina, a separate trial for Ms. Serrazina would not unduly result in duplication of evidence.

Weighing the four second-tier Drougas factors, the balance is strongly weighted on the side of severance. Accordingly, Ms. Serrazina's trial should be severed from the trial of the co-defendant affiant(s).

IV. FACTS RELEVANT TO MOTION TO SEVER BASED ON DUE PROCESS CONSIDERATIONS

    A.  The Indictment

The charges in the indictment center around five main types of criminal activity: (1) a scheme of bribery, kickbacks and the providing of illegal gratuities by and between by Raymond Asselin Sr., the executive director of the Springfield Housing Authority ("SHA"), Arthur Sotirion, the assistant executive director of SHA,

8

and SHA contractors and vendors;[5] (2) the knowing receipt of illegal gratuities by members of the Asselin and Sotirion families;[6] (3) a conspiracy to commit mail and wire fraud by sending false campaign financial reports by wire and through the United States mail;[7] (4) interfering with the judicial process;[8] and (5) the filing of false income tax returns.[9]

---

[5] This includes violations of 18 U.S.C. §1962(c), Racketeering (Count 1); 18 U.S.C. §1962(d), Racketeering Conspiracy (Count 2); 18 U.S.C. §§201 and 371, Conspiracy to Commit Federal Bribery and Receive Illegal Gratuities (Count 3); 18 U.S.C. §201, Federal Bribery (Counts 14, 15, 20, 24, 27, 55, 62, 70, 71, 80, 81 and 82; these counts all allege cash payments from contractors to Sotirion and Asselin Sr.); 18 U.S.C. §§371 and 1341, Conspiracy to Commit Mail Fraud (Count 90, which alleges Asselin Sr. and Sotirion defrauded a local insurance company); and 18 U.S.C. §1951, Extortion (Counts 95-96, which allege Asselin Sr., Christopher Asselin and Sotirion extorted a local electrician).

[6] This includes violations of 18 U.S.C. §201, Federal Bribery (Counts 4-13, 16-19, 21-23, 25-26, 28-54, 56-61, 63-69, 72-79 and 83-84); 18 U.S.C. §§371 and 641, Conspiracy to Commit Theft Against Federal Government (Count 85); and 18 U.S.C. §1957, Money Laundering (Count 97, which alleges Joseph Asselin engaged in an illegal monetary transaction).

[7] This includes violations of 18 U.S.C. §§371, 1341, 1343 and 1346, Conspiracy to Commit Mail and Wire Fraud (Count 86); 18 U.S.C. §§1341 and 1346, Mail Fraud (Counts 87 and 88), and 18 U.S.C. §§1343 and 1346, Wire Fraud (Count 89).

[8] This includes violations of 18 U.S.C. §1512, Witness Tampering (Counts 98-102); and 18 U.S.C. §1503, Obstruction of Justice (Counts 103-107).

[9] This includes violations of 26 U.S.C. §7206(1), Filing False Income Tax Returns (Counts 108-122).

9

B.  Charges Against Ms. Serrazina

Ms. Serrazina is charged with just six of the 122 counts and five of the 284 illegal acts alleged in the indictment. The counts against her include:

(1) Count 3: violation of 18 U.S.C. §§201, 371, Conspiracy to Commit Federal Bribery and Receive Illegal Gratuities.

(2) Counts 13, 35 and 36: violation of 18 U.S.C. §201, Federal Bribery and Receipt of Illegal Gratuity.

(3) Count 85: violation of 18 U.S.C. §§371 and 641, Conspiracy to Commit Theft against the Government.[10]

These five counts are based on allegations that Ms. Serrazina knowingly received illegally obtained goods or services:[11] (1) a stove and refrigerator (Counts 3, 13); (2) an alarm system (Counts 3, 35); (3) construction of a porch roof (Counts 3, 36); (4) the benefit of a $137.32 service call (Count 85); and (5) the benefit of automotive services (Count 78).

In contrast, Ms. Serrazina is not named in 78 of the 81 federal bribery counts, nor in the following categories of crimes:

(1) Count 1: 18 U.S.C. §1962(c), Racketeering.

(2) Count 2: 18 U.S.C. §1962(d), Conspiracy to Commit Racketeering.

---

[10] Ms. Serrazina is also charged with Count 103, Obstruction of Justice. That count is addressed above.

[11] The total value of the goods and services is less than $10,000.00 which renders them minor in the scope of the multi-million dollar racketeering schemes alleged by the government.

(3) <u>Count 86</u>: 18 U.S.C. §§371, 1341, 1343 and 1346, Conspiracy to Commit Mail and Wire Fraud (false campaign finance reporting).

(4) <u>Counts 87-88</u>: 18 U.S.C. §§1341 and 1346, Mail Fraud (false campaign finance reporting).

(5) <u>Count 89</u>: 18 U.S.C. §§1343 and 1346, Wire Fraud (false campaign finance reporting).

(6) <u>Count 90</u>: 18 U.S.C. §§371 and 1341, Conspiracy to Commit Mail Fraud (defrauding local insurance company).

(7) <u>Counts 91-94</u>: 18 U.S.C. §1341, Mail Fraud (defrauding local insurance company).

(8) <u>Counts 95-96</u>: 18 U.S.C. §1951, Extortion (obtaining property from a local electrical contractor).

(9) <u>Count 97</u>: 18 U.S.C. §1957, Money Laundering (purchase of automobile);

(10) <u>Counts 98-102</u>: 18 U.S.C. §1512, Witness Tampering.

C.  <u>Argument</u>

    1. <u>The Court has broad discretion to order separate trials of counts or sever the defendants' trials in order to prevent prejudice to a defendant</u>

Fed. R. Crim. P. 14 recognizes that there may be instances in which defendants, although appropriately joined under Rule 8, should nevertheless be severed in the discretion of the trial court. Rule 14 permits severance if "consolidation for trial appears to prejudice a defendant or the government." If consolidation would appear to prejudice a defendant, the court may

11

"order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

The Supreme Court has confirmed that severance is warranted when a reliable judgment is put in jeopardy by trying all of the co-defendants together. That occurs when:

> evidence that a jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.

United States v. Zafiro, 506 U.S. 534, 539 (1993).

It is particularly likely to happen when, as here, "many defendants are tried together in a complex case and they have markedly different degrees of culpability." Id. In that case, the "risk of prejudice is heightened." Id.

The reason for a court ordering different trials on separate counts and/or the severance of trials among co-defendants is straightforward. When "the evidence against one's co-defendants is far more damaging than the evidence facing the accused," a jury may not reasonably be expected to "compartmentalize the evidence" against the defendant. United States v. Gibbs, 904 F.2d 52, 56 (D.C. Cir. 1990); see also United States v. Alvarez, 358 F.3d 1194, 1206 (9th Cir. 2004) (noting danger of evidence "rubbing off" on defendant).

Moreover, severance is often in the interest of judicial economy. A single trial of all thirteen defendants on 122 counts

12

would impose its own significant burdens on judicial efficiency. See United States v. Casamento, 887 F.2d 1141, 1152 (2d. Cir. 1989) (noting that a joint trial of more than ten defendants results in more trial disputes, makes a less manageable task for the trial judge, and reduces the jurors' ability to focus on individual defendants); United States v. Shea, 750 F.Supp. 46, 48-49 (D. Mass. 1990) (citing Casamento and noting that large, multi-defendant trials "impair the court's ability to provide prompt, fair and just disposition . . . of other matters pending before the court and throughout the duration of the . . . proceedings"); United States v. Gallo, 668 F.Supp. 736, 753-55 (E.D.N.Y. 1987) (questioning "the traditional assumption that denial of severance in [complex, multi-defendant] cases promotes efficiency" and noting hardship on jurors, judges, the danger of frequent interruptions and scheduling conflicts due to number of people involved, and problems of trial management).

Although "the determination of when potential prejudice reaches the threshold identified under Rule 14--the threshold requiring judicial intervention--[it] is not an exact science,"[12] a fair reading of the allegations in the indictment in this case necessarily leads to the conclusion that: (a) separate trials on different counts should be ordered, and (b) Ms. Serrazina should be severed from trial with her family member co-defendants.

---

[12] United States v. Green, 324 F.Supp.2d 311 (D. Mass. 2004).

2. <u>The counts involving allegations of racketeering between Raymond Asselin Jr., Arthur Sotirion, Peter Davis, John Spano and Paul Bannick should be tried separately from Maria Serrazina</u>

A major theme in the indictment is the allegation that Raymond Asselin Sr., the executive director of the Springfield Housing Authority ("SHA") and Arthur Sotirion, the assistant executive director of SHA, used their positions to extract bribes, kickbacks and illegal gratuities from SHA contractors and vendors in exchange for the receipt of contracts. Twelve different contractors or vendors are identified as participants in the scheme, while three, John Spano, Paul Bannick and Peter Davis, are named as defendants in the indictment.

The scheme of bribes and kickbacks is extraordinary, both in terms of its scope and magnitude. Hundreds of contracts, subcontracts and bid documents, none of which involve Ms. Serrazina in any way, will be introduced at the trial of Arthur Sotirion, Raymond Asselin Sr., Peter Davis, Paul Bannick and John Spano. For example, the government has identified 21 separate contracts, totalling $11,949,513.00, involving the company (P.J. Richfield) of Peter Davis alone.[13] Assumedly, the other eleven contractors received similar numbers of contracts.

The magnitude of the alleged contractor/vendor fraud is also startlingly large. An unindicted co-conspirator contractor, Nicholas Katsounakis, testified before the grand jury that Arthur

---

[13] See September 19, 2005 letter from William M. Welch II.

Sotirion and Raymond Asselin Sr. made a written demand for $717,000.00 in kickbacks from him for contracts steered his way, of which he had paid over $300,000.00. Similarly, it is alleged in the indictment that G & R Construction paid more than $400,000.00 to or for the benefit of Arthur Sotirion and Raymond Asselin Sr. in order to obtain SHA contracts. The evidence at trial will further show that other contractors were on monthly kickbacks or "payment plans" with Raymond Asselin Sr. and Arthur Sotirion (Counts 80, 81 and 82).

Given this type of evidence, the risk of prejudice to Ms. Serrazina from being put to trial with Raymond Asselin Sr., Arthur Sotirion, Peter Davis, John Spano and Paul Bannick is substantial. For these reasons, the charges against Ms. Serrazina should not be

tried at the same time Counts 1, 2, 3,[14] 14, 15, 20, 24, 27, 55, 62, 70, 71, 80, 81, 82 are being tried.

        3.    <u>The counts against Arthur Sotirion, Raymond Asselin Sr., Janet Asselin and Paul Bannick for filing false income tax returns should be tried separately from Ms. Serrazina</u>

A second category of criminal activity in the indictment is a series of counts which allege that Arthur Sotirion, Raymond Asselin Sr., Janet Asselin and Paul Bannick filed false income tax returns, resulting in a tax loss to the government in excess of $400,000.00. None of these counts involve Ms. Serrazina.

Assuming that the case is tried in a manner similar to other cases of this nature, the proof at trial will be based on a detailed analysis of the four defendants' incomes and expenditures. The trial itself will be laborious. Moreover, little, if any of

---

[14] Count 3, which alleges a conspiracy to commit federal bribery, appears to have been "cobbled" together in order that all thirteen defendants would be named in at least one count. However, the criminal acts involving the Asselin family members alleged in Count 3 are far different in kind from those alleged to have been committed by Raymond Asselin Sr., Arthur Sotirion, Peter Davis, John Spano and Paul Bannick. The Asselin family members allegedly were the knowing recipients of a number of the illegal gratuities demanded by Raymond Asselin Sr. and Arthur Sotirion from the contractor/vendors. Their defense will be a lack of knowledge that the items in question were obtained illegally. But this is not an issue which will be in question when the jury is determining the guilt or innocence of the contractors/vendors. For these defendants, the issue at trial will simply be whether such illegal gratuities were provided. The state of mind of the recipients of the gratuities will not be before the jury. Accordingly, although all thirteen defendants are named in this count, Ms. Serrazina's trial on Count 3 should be severed from the trial of Raymond Asselin Sr., Arthur Sotirion, Peter Davis, John Spano and Paul Bannick.

the proof which will be used against Ms. Serrazina will be introduced at a trial on those counts. Similarly, it is highly unlikely that any of the witnesses, except for Special Agent Hedges, would appear at both trials. Accordingly, Counts 108 through 112 should be tried separately from Ms. Serrazina.

### 4. Ms. Serrazina should be tried separately from the other co-defendants on the remaining counts

If Ms. Serrazina is tried together with the other co-defendants on the remaining counts, the evidence admissible against them, and in support of the counts for which she is not charged, will be highly prejudicial to her. A substantial risk will be created that the jury will be unable to compartmentalize the evidence that is admissible against Ms. Serrazina alone.

For example, Ms. Serrazina is not charged with Count 86, Conspiracy to Commit Mail and Wire Fraud. However, if she is tried together with her co-defendants, her jury will hear evidence of a conspiracy to "defraud and deprive the voters of the 12th Hampden District and the general public of the Commonwealth of Massachusetts of the honest services of State Representative Christopher Asselin" (Ind. p. 104). Such evidence is likely to inflame many members of the jury, all of whom will be citizens of the Commonwealth. Ms. Serrazina should not be forced to defend herself against such highly prejudicial testimony when it would not be admissible at her separate trial. See Zafiro, 506 U.S. at 539.

The jury will also hear evidence of threats made against a local electrical contractor to force him to provide goods and services which were not legally due. Again, such evidence, indicating a level of wrongdoing significantly greater than the crimes for which Ms. Serrazina is charged, carries with it a substantial risk that the jurors' reaction to such evidence will cloud their judgment against Ms. Serrazina. See Gibbs, 904 F.2d at 56.

If Maria Serrazina is tried with the other co-defendants, examples of such prejudice abound. The evidence introduced at her trial will include evidence of a scheme to cheat residents of subsidized housing out of tens of thousands of dollars in quarters from their laundry rooms (Ind. ¶72); evidence of the destruction of lists of individuals who legitimately requested housing assistance (Ind. p. 122); the provision of subsidized housing in exchange for political favors; large purchases drawn from SHA or made by SHA contracts, such as payment for an in-ground swimming pool (Racketeering Act 59), over $50,000.00 for the construction of a new house (Racketeering Acts 107-113), $20,500.00 for a car (Racketeering Act 134), $52,500.00 for the purchase of property (Racketeering Acts 137), $14,000.00 for a boat (Racketeering Act 138), $10,000.00 for a new heating and air conditioning system (Racketeering Act 78), $10,201.00 for a new plumbing system (Racketeering Act 77), $8,015.27 for a new kitchen countertop

(Racketeering Act 83), and $12,245.00 for the installation of a plumbing system (Racketeering Act 88).

The danger of trying a much less culpable defendant alongside highly culpable ones was elaborated on by the Second Circuit in United States v. Kelly, 349 F.2d 720, 759 (2d. Cir. 1965). That court reversed the defendant's conviction for the trial court's failure to sever his trial because "the slow but inexorable accumulation of evidence [against the defendant's co-defendants] . . . must have stamped them in the eyes of the jurors as unscrupulous swindlers of the first rank [and some of these perceptions must have] rubbed off on [the defendant]." Id. This same danger would be present if Ms. Serrazina were to be tried with all of her co-defendants. See id.; see also United States v. Gallo, 668 F.Supp. 736, 750 (E.D.N.Y. 1987), quoting in part United States v. Capra, 501 F.2d 267, 281 (2d. Cir. 1974) ("Where the evidence of the minor defendants is so little or so vastly disproportionate in comparison to that admitted against the remainder of the defendants the likelihood of spillover prejudice is greatly enhanced" (internal quotations omitted)).

V. CONCLUSION

For the foregoing reasons, this Court should grant Ms. Serrazina's motion to sever.

19

                                            Respectfully submitted,
                                            The defendant Maria Serrazina,
                                            By her attorney,

Dated:   December 23, 2005

                                            Thomas Lesser, BBO No. 295000
                                            Lesser, Newman, Souweine & Nasser
                                            39 Main Street
                                            Northampton, MA 01060
                                            413-584-7331

## CERTIFICATE OF SERVICE

I, Thomas Lesser, hereby certify that on December 23, 2005, I served a copy of the foregoing document on all counsel of record and counsel for the government by mailing, first class, postage prepaid to all counsel of record and William Welch, Esq., Assistant United States Attorney, Federal Building and Courthouse, 1550 Main Street, Springfield, MA 01103-1422.

                                            Thomas Lesser

Serrazina\M Supp Motion to Sever
12/23/06