UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>Plaintiff, )<br><br>v. )<br><br>RAYMOND ASSELIN SR., et al. )<br><br>Defendants ) | CRIMINAL ACTION No. 04-30033-MAP |

MARIA SERRAZINA'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION TO SUPPRESS AND RETURN PROPERTY

I.   INTRODUCTION

This is a case in which the government, rather than narrowly tailoring the search warrant for each of the premises it searched, chose to use the same warrant for eight different locations. In other words, the FBI requested permission to seize the same five categories of items from eight different homes and offices.

In Maria Serrazina's case, the search warrant fails because the supporting affidavit clearly lacked probable cause that many of the items sought by and seized pursuant to the search warrant would be located in her home.

II.  FACTS REGARDING SEARCH WARRANT

On September 27, 2002, the Federal Bureau of Investigation executed a search warrant of the residence of defendant Maria Serrazina at 140 Salli Circle, Ludlow, Massachusetts. Subsequently, Maria Serrazina was indicted, along with twelve other

1

defendants, including her father Raymond Asselin Sr. and seven
other family members.  The heart of the wide-ranging, 122-count,
148-page indictment is that Raymond Asselin Sr., the Executive
Director of the Springfield Housing Authority ("SHA"), and Arthur
Sotirion, the Assistant Executive Director of SHA, conspired with
various contractors to award contracts in exchange for kickbacks.
In addition, the indictment alleges that Asselin Sr. and Sotirion:
(a) directed kickbacks toward, and (b) used SHA funds and SHA
employees for various home improvement projects at their families'
homes.

III. SEARCH WARRANT AND SUPPORTING AFFIDAVIT

      A.  The Search Warrant

    The  terms  of  the  search  warrant  for  Maria  Serrazina's
residence are extraordinarily broad.[1]  It authorized the following:

      (1)  Seizure  of  contracts,  estimates,  permits,  receipts,
          invoices, delivery tickets, packing slips, handwritten
          notes, and any other documents relating to the request,
          ordering, delivery, construction, and/or completion of
          home improvement projects and/or materials (Category A).

      (2)  Inventorying, videotaping, photographing and seizure,
          where appropriate, of paint/stain samples, paint/stain

---

[1] The same affidavit and list of items to be seized was used
for eight different search warrant, including the homes of six
Asselin family members, the home of Arthur Sotirion, and the
offices of Raymond Asselin Sr. and Arthur Sotirion.  The eight
locations are listed in Section I of the affidavit on pages 2 and
3.

can labels, wallpaper and/or remnants, carpet and/or carpet remnants, tile and/or tile remnants, roofing and/or roofing remnants, windows, rooms, contents of rooms, and any other home improvement projects and/or materials (Category B).

(3) Seizure of financial records, such as personal checking accounts, home equity lines, bank statements, credit card statements, credit card receipts, cancelled checks, shredding machines, shredded items, and any other documents relating to the availability of financial resources, or lack thereof, for personal expenditure on and/or reimbursement of home improvements projects and/or materials (Category C).

(4) Inventorying, videotaping, photographing, and seizure, where appropriate, of water heaters, refrigerators, stoves, power tools, lawn mowers, snowblowers, window labels, manufacturer labels, contents of rooms, and any other furnishings, appliances, and/or tools bearing SHA bar code numbers, serial numbers, partially or completely obliterated serial numbers, or other identifying information (Category D).

(5) Seizure of any and all documents and/or physical items relating to the payments and/or receipt of kickbacks, gifts, gratuities, and/or things of value from SHA vendors, including, but not limited to, Rolodexes,

3

> appointment calendars, business correspondence, draft and
> final contracts, estimates, meeting notes, daily
> planners, personal diaries, personal handwritten notes,
> briefcases, and cash (Category E).

The search warrant is attached as Exhibit A.

In practical terms, the warrant authorizes the seizure, inspection and inventorying of virtually every document and item in Maria Serrazina's residence.[2]

B.    The Affidavit

In his affidavit in support of the application for a search warrant, Special Agent Clifford Hedges set forth information he personally obtained from ten cooperating witnesses. The cooperating witnesses are identified as CW-1 through CW-10 in the affidavit. (The affidavit is attached as Exhibit B.)

The affidavit is broken down into five sections: (1) I. Introduction, (2) II. The Present Investigation and Witnesses, (3) III. Use of SHA Resources for Personal Home Improvements, (4) IV. Items to be Seized, and (5) V. Conclusion.

Section II, "The Present Investigation," contains the purported probable cause to search the Serrazina residence. It

---

[2] This is not a case in which the scope of the search warrant was limited by the contents of the affidavit because: (1) the affidavit was not incorporated by reference into the search warrant and (2) the agents did not, in fact, limit their search and seizure of items to a more narrow class of items articulated in the affidavit. See In the matter of Lafayette Acad., 610 F.2d 1, 4-5 (1st Cir. 1979).

details, in 77 separate paragraphs set forth over 28 pages of the affidavit (pages 5 through 33), the information Hedges received from the ten cooperating witnesses. Since the paragraphs contain the actual statements of each cooperating witness, the question of whether there is a factual basis for probable cause is relatively straightforward.

C.   Specific Information in the Affidavit Concerning the Serrazina Residence

Aside from information related to a briefcase,[3] the cooperating witness evidence concerning Maria Serrazina and/or her residence is contained in five of the 77 paragraphs. Four of the paragraphs recite statements from cooperating witnesses who worked at the Serrazina residence, while the fifth confirms the statements of two of those cooperating witnesses.

(1)   In Paragraph 28A, "CW-1 stated that Asselin Sr. used SHA resources to complete and pay for home improvements at the residence of his daughter Maria Serrazina at 140 Salli Circle, Ludlow, Massachusetts," to wit, "SHA employees have painted the interior of Maria Serrazina's residence on several occasions. CW-1 also stated that SHA supplied the refrigerator in Serrazina's residence."

---

[3] Maria Serrazina concedes that there was probable cause to search her residence for a briefcase. Paragraph 39 of the affidavit supports that proposition. That leaves the question before the Court of whether there was probable cause to support a search for the remainder of the items specified in the warrant.

(2)    In Paragraph 28B, "CW-3 stated that Asselin Sr. used SHA resources to complete and pay for home improvements at Maria Serrazina's personal residence," to wit, "CW-3 stated that CW-4 painted and wallpapered a room at Serrazina's personal residence. CW-3 recalled that CW-3 'covered' for CW-4 on this particular job by falsely punching CW-4's SHA time card when CW-4 worked at Maria Serrazina's residence."

(3)    In Paragraph 28C, "CW-4 stated that Asselin Sr. used SHA resources to complete and pay for home improvements at Maria Serrazina's personal residence," to wit, "CW-4 stated that CW-4 hung wallpaper at her personal residence. CW-4 also recalled having painted various rooms at Maria Serrazina's residence on two or three separate occasions. CW-4 performed these jobs on SHA time."

(4)    Similarly, in Paragraph 28C (sic), "CW-7 stated that Asselin Sr. used SHA resources to complete and pay for home improvements at Maria Serrazina's personal residence," to wit, "CW-7 painted at her personal residence on several different occasions since approximately 1994. CW-7 stated that paint was always located at the residence when CW-7 arrived and CW-7 performed this work on SHA time."

6

(5)   In Paragraph 22, CW-8 stated that he assumed the responsibilities of supervising the SHA painting crew in approximately 1998 and was aware that two members of the SHA painting crew, CW-3 and CW-4, performed personal work for Asselin Sr. at the residence of Maria Serrazina.

The statements of these five cooperating witnesses provided ample evidence of wallpapering and painting at the Serrazina residence, as well as her receipt of a refrigerator, but no evidence whatsoever that SHA funds or contractors were used for anything else at her residence.

In contrast, the affidavit alleges that SHA contractors and funds were involved in a wide variety of specific home improvement projects at the other residences named in the search warrant (those of Ray Asselin Sr., James Asselin, Ray Asselin Jr., Joseph Asselin, Chris Asselin, and the "Asselin Family Chatham vacation home"). For example, SHA funds and/or contractors were allegedly used for the following:

(1)   Ray Asselin Sr.'s residence (¶23):  to buy a refrigerator, stove, dishwasher, water heater, lawnmower, snow blower, and concrete; to mow his lawn, remodel his kitchen and dig up and pour a new concrete grill pad.

(2)   James Asselin's residence (¶25):  to pay for a new roof, new windows, install woodwork, drywall, a new bath, tiling, rewiring, painting, wall papering, rugs, water heater, lawnmower, snow blower, and bathroom vents.

7

(3)  Ray Asselin Jr.'s residence (¶26):  to pay for a new roof, new windows, the installation of tile, painting, wallpapering, water heater, lawnmower and snow blower.

(4)  Joseph Asselin's residence (¶27): to pay for a banister, rug, partial construction of a new home, wiring, plumbing, painting, wallpapering, and sheet rocking.

(5)  Chris Asselin's residence (¶29): to pay for a new roof, painting, wallpapering, yard work, redoing a driveway, several truckloads of loam, new windows, water heater, lawn mower, snow blower, approximately $23,000 towards a new pool, kitchen tiling, kitchen shelving, and lumber.

D.  The Affidavit Did Not Provide the Probable Cause to Search for the Majority of the Items Seized

The information contained in the affidavit does not support the expansive search of Maria Serrazina's residence allowed by the search warrant. See United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999); United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1991) (holding that warrant cannot be broader "than the probable cause on which it is based").  "A warrant application must demonstrate probable cause to believe that a crime has been committed . . . and that enumerated evidence of the offense will be found at the place to be searched" (emphasis added). United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999), citing United States v. Zayas-Diaz, 95 F.3d 105, 110-111 (1st Cir. 1996).  Probable cause is established when facts in the affidavit "warrant a man of

8

reasonable caution to believe that evidence of a crime will be found" at a particular location. Id., quoting <u>Brinegar v. United States,</u> 338 U.S. 160, 175-76 (1949). "Mere suspicion, rumor, or strong reason to suspect wrongdoing are not sufficient." Id.

Because a warrant must demonstrate that evidence of a particular crime will be found at the <u>particular</u> place searched, the affidavit in application of the search warrant must establish probable cause that each category of items listed on the search warrant would be found at Maria Serrazina's residence. See id. It is not sufficient that there may have been probable cause that the categories of items allowed to be seized by Maria Serrazina's search warrant were located in Raymond Asselin Sr.'s residence, the residences of his four other children, Arthur Sotirion's residence and/or the offices of Sotirion and Asselin Sr. Probable cause to search for those items enumerated in the search warrant must have existed for her residence. The government's choice to use the same search warrant for Arthur Sotirion and all of the Asselin family members does not absolve it of its constitutional obligations.

      E.   <u>None of the Items in Category A, and Most of the Items in Categories B and D are not Supported by Probable Cause Because There is no Evidence that Maria Serrazina Received Anything Other than a Refrigerator and Painting and Wallpapering Services, and these Categories Authorize the Search and Seizure of Evidence of Crimes Not Delineated in Nor Inferred from the Affidavit</u>

Category A in the Serrazina search warrant permits the seizure of all documents relating to "home improvement projects and/or materials," while Categories B and D are even broader. They allow

9

the inventorying, videotaping, photographing and seizure of all "the contents of rooms"--in other words, the seizure of any objects in the Serrazina home, without limitation. Yet, none of the ten cooperating witnesses in the affidavit said that Maria Serrazina received any other benefits from SHA other than painting, wallpapering, and a refrigerator. Their statements provided no cause to believe that the FBI would find evidence of other illegal home improvement projects or other crimes at her residence. This conclusion is reinforced by the fact that the cooperating witnesses recited, in detail, widespread home improvement projects at the homes of all the other Asselin family members. If there had been additional home improvement projects at the Serrazina residence, they certainly would have been included in the affidavit.

Courts have upheld broad all-record searches and searches for evidence of crimes not particularly delineated in the affidavit only when evidence of other crimes can be inferred from the facts contained in the affidavit. See United States v. Brien, 617 F.2d 299, 308 (1st Cir. 1980) (finding that the two-hundred and fifty complaints against the defendant could be "inferred to be only the tip of the iceberg" and justifying an all-record search); United States v. Walker, 324 F.3d 1032, 1038 (8th Cir. 2003) (evidence that defendant is a drug dealer establishes probable cause for search for drug records, cash proceeds and weapons); United States v. Weber, 923 F.2d 1338, 1344 (9th Cir. 1991) ("[P]robable cause to believe some incriminating evidence will be present at a particular

10

place does not necessarily mean there is probable cause to believe that there will be more of the same"). Cf. Andreson v. Maryland, 427 U.S. 463, 479 (1976) (holding search warrant valid because it did not authorize search and seizure of evidence of other crimes, but only for evidence of the crime that was described in the affidavit).

By authorizing a broad search of Maria Serrazina's residence that included the seizure of "contents of rooms," the warrant permitted the government to search Ms. Serrazina's home for evidence of other crimes and/or illegal home improvement projects for which there was no probable cause. Id.

F.   The Documents Seized Pursuant to Category C Should be Suppressed and Returned to the Defendant Because There is No Likelihood Expressed in the Affidavit that Her Financial Records Would Contain Evidence of the Crimes She is Alleged to Have Committed

Category C authorized a search and seizure of:

Financial documents such as personal checking accounts, home equity lines, bank statements, credit card statements, credit card receipts, cancelled checks . . . and any other documents relating to the availability of financial resources, or lack thereof, for personal expenditure and/or reimbursement of home improvement projects and/or materials.

This was improper. There was no cause to allow a seizure of all of Ms. Serrazina's financial documents.

The testimony from the cooperating witnesses established only that:  (a) Ms. Serrazina had received a refrigerator, and (b) wallpapering and painting had been done in certain rooms in her residence on "several occasions" in a period of time stretching

11

back eight years, to 1994. The question then becomes whether, when the alleged illegal items would have cost an average of no more than $1,000.00 per year,[4] a seizure of eight years of financial records was likely to provide evidence of the "availability of financial resources, or lack thereof [to spend that sum per year]." The situation would be different if the affidavit had stated that Ms. Serrazina was unemployed when the work was done, and/or if eight thousand dollars' worth of work had all been completed in one year. With those facts, the government would at least have a legitimate argument. However, the FBI was well aware at the time that the affidavit was prepared that both Maria Serrazina and her husband had been employed full-time from 1994 through 2001 (Ms. Serrazina at the Department of Social Services and then as a guidance counselor, and Jack Serrazina at the Connecticut Department of Corrections), and that the couple plainly had the financial ability to pay an average of $1,000.00 per year.[5] Accordingly, without more, there was no probable cause to believe that a search of Ms. Serrazina's financial records would reveal

---

[4] The cost of a refrigerator would have been approximately $1,000.00 and the cost of wallpapering and painting on two or three occasions no more than $6,000.00 (i.e., no more than $2,000.00 each time).

[5] The government was aware of these facts from taped conversations it had recorded when it had Lisa Asselin wear a "wire" at Asselin family gatherings. See United States v. Vigeant, 176 F.3d 565, 572 (1st Cir. 1999) (the government cannot establish probable cause by omitting factual material easily accessible to the affiant).

that she would have been unable to pay $1,000.00 a year for the items in question.

       G.   <u>All of the Documents and Items, Except for the Briefcase and Cash, Seized Pursuant to Category E, Should be Suppressed and Returned to the Defendant Because There is No Probable Cause her Residence Would Contain Evidence of Kickbacks</u>

The affidavit established probable cause that Raymond Asselin Jr. and Raymond Asselin Sr. placed a briefcase containing cash in Ms. Serrazina's attic (¶¶39A-B). However, there is no suggestion, let alone probable cause, that Ms. Serrazina received any "payments" and/or "kickback" gifts, gratuities, and/or things of value from SHA vendors. Therefore, the search warrant improperly permitted a search for "all documents and/or physical items relating to the payment and/or receipts of kickbacks, gifts, gratuities, and/or things of value from SHA vendors." Category E of the warrant should have been limited to the briefcase containing cash.

IV.   <u>THE LEON GOOD-FAITH EXCEPTION SHOULD NOT APPLY BECAUSE THE SUPPORTING AFFIDAVIT IS SUFFICIENTLY LACKING IN INDICIA OF PROBABLE CAUSE WITH REGARD TO THE ABOVE CATEGORIES OF ITEMS AND IN RELATION TO MS. SERRAZINA'S RESIDENCE, AND SPECIAL AGENT HEDGES OMITTED MATERIAL FACTS FROM HIS AFFIDAVIT</u>

Under <u>United States v. Leon</u> 468 U.S. 897, 923 (1984), the exclusionary rule applies to evidence obtained pursuant to a warrant when the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In other words, the officer should not be credited with a good faith attempt to secure evidence if "a

13

reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause." Malley v. Briggs, 475 U.S. 335, 345 (1986) (adopting Leon standard of objective reasonableness to qualified immunity context); United States v. Vigeant, 176 F.3d 565, 572 (1st Cir. 1999); United States v. Ricciardelli, 988 F.2d 8, 15 (1st Cir. 1993).

In this case, Special Agent Hedges should have known that there was no probable cause for the overwhelming majority of the categories in the Serrazina search warrant. An agent with the FBI for almost eighteen years, and a police officer for over five years before that, he was the lead agent in the investigation of allegations of criminal conduct at the SHA involving the Asselin family. He personally prepared the affidavit, interviewed the witnesses and listened to the tape-recorded conversations referred to in the affidavit. For reasons known only to him, he chose to submit a single affidavit in support of eight different search warrants and requested that the same categories of items be seized from each location. He made absolutely no attempt to tailor the categories of items to be seized pursuant to the Serrazina search warrant based on the probable cause established for her residence.

Instead, Agent Hedges appears to have assumed that since the other Asselin family members committed widespread illegalities, probable cause necessarily existed for Ms. Serrazina as well. However, this is not the type of individualized inquiry required by the Fourth Amendment. Guilt by association, even among family

14

members, is forbidden.  This is something every reasonably well-trained officer should know.

In effect, the search warrant is an attempt by Special Agent Hedges to bootstrap an expansive search of Maria Serrazina's residence onto the probable cause present to search in depth the residences of the other Asselin family members.  Agent Hedges should have known that such a search of Ms. Serrazina's residence was not supported by probable cause and although Agent Hedges had the ability to more narrowly tailor the search warrant of Ms. Serrazina's home, he chose not to do so.  Therefore, the good faith exception should not apply to the evidence seized pursuant to the warrant that lacked probable cause.  See Leon, 468 U.S. 897, 923 (1984); Vigeant, 176 F.3d at 571; Ricciardelli, 998 F.2d at 15-16.

V.   BECAUSE THERE WAS NO PROBABLE CAUSE TO SEARCH OR SEIZE ANY OF THE EVIDENCE SEARCHED OR SEIZED PURSUANT TO CATEGORIES A AND C, ALL OF THE ITEMS REMOVED FROM MS. SERRAZINA'S HOME PURSUANT TO THESE CATEGORIES SHOULD BE SUPPRESSED AND RETURNED TO MS. SERRAZINA

Because Categories A and C were not properly limited to those items for which there was probable cause, all of the evidence seized pursuant to these categories must be suppressed.  See United States v. Falon, 959 F.2d 1143, 1148-49 (1st Cir. 1992) (holding that "[b]ecause the warrant failed explicitly to limit [the] categories of items to the subset directly linked to the alleged [crime], the warrant was to that extent insufficiently particular to meet the requirements of the Fourth Amendment and suppressing evidence seized pursuant to those categories).  Partial suppression

15

of evidence from these categories is unwarranted because each of these entire categories is constitutionally infirm.  Cf. United States v. Cook, 657 F.2d 730, 734 (5th Cir. 1981) (discussing when to sever evidence seized from a warrant that "provides a constitutionally sufficient description of some, but not all, of the things to be seized").

Therefore, the items listed on the inventory sheet as Items 2 through 6 and 8 should be suppressed and returned to Ms. Serrazina.

VI.  THE ITEMS SEIZED AND THE INVENTORIES, PHOTOGRAPHS AND VIDEOS CREATED PURSUANT TO CATEGORIES B, D, AND E, THAT ARE NOT SUPPORTED BY PROBABLE CAUSE, SHOULD BE SUPPRESSED AND RETURNED TO DEFENDANT SERRAZINA

Because Categories B, D, and E each contain at least one sufficiently particular description of an item to be seized (or videotaped, photographed, or inventoried) that is supported by probable cause, partial suppression is warranted.[6]  See Cook, 657 F.2d at 734.  This includes the entrance photographs, the inventory lists of all of the appliances except the refrigerator and the samples noted in Item 7 on the inventory list.[7]

---

[6] The items supported by probable cause are Category B, paint/stain samples, paint/stain can labels, and wallpaper and/or remnants; Category D, the refrigerator; and Category E, a briefcase containing cash.

[7] Excluding the briefcase containing cash, the inventory sheet attached to the warrant does not indicate any date books, personal planners or any other item taken from the Serrazina residence pursuant to Category E.  If any items were removed or searched pursuant to Category E, these should be suppressed and returned as well.

16

VII. <u>CONCLUSION</u>

For the foregoing reasons, Maria Serrazina's motion to suppress and return property should be granted.

Respectfully submitted,
The defendant Maria Serrazina,
By her attorney,

Dated:  December 23, 2005

_____
Thomas Lesser, BBO No. 295000
Lesser, Newman, Souweine & Nasser
39 Main Street
Northampton, MA 01060
413-584-7331

CERTIFICATE OF SERVICE

I, Thomas Lesser, hereby certify that on December 23, 2005, I served a copy of the foregoing document on all counsel of record and counsel for the government by mailing, first class, postage prepaid to:  counsel of record and William Welch, Esq., Assistant United States Attorney, Federal Building and Courthouse, 1550 Main Street, Springfield, MA 01103-1422.

_____
Thomas Lesser

Serrazina\M Supp Motion to Suppress
12/23/05

17