UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-N-04-30033-MAP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RAYMOND ASSELIN, SR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT SERRAZINA'S MOTION TO SUPPRESS

The United States of America, by and through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files its response to defendant Serrazina's Motion to Suppress.

Defendant Serrazina's motion should be denied. As explained below, probable cause existed to seize all of the items listed in Attachment A of the search warrant. Attachment A was also sufficiently particular to guide the agents in seizing only a limited class of documents. The agents also acted in good faith in executing the search warrant, thus rendering the confiscated items lawfully seized and admissible under Leon. Finally, given that defendant Serrazina has conceded that probable cause existed for some items, any contested items were properly seized under the plain view doctrine.

## I. Sufficient Probable Cause And Particularity Existed To Search Defendant Serrazina's Residence For All Of The Items Listed In Attachment A.

The Fourth Amendment requires that a warrant "particularly describe" the place to be searched and the persons or things to be seized. U.S. Const. Amend. IV; see United States v. Morris, 977 F.2d 677 (1st Cir. 1992). "Any search intruding upon that privacy interest must be justified by probable cause and must satisfy the particularity requirements, which limits the scope and intensity of the search." United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1987).

A. Probable Cause

Probable cause for a warrant based on an affidavit "'exists where information in the affidavit reveals "a fair probability that contraband or evidence of a crime will be found in a particular place."'" United States v. Syphers, 426 F.3d 461, 464 (1st Cir. 2005)(quotations omitted). "'"Probability is the touchstone" of this inquiry.'" Syphers, 426 F.3d at 464. "'[P]robable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Syphers, 426 F.3d at 465 (quoting United States v. Garcia, 197 F.3d 1223, 1227 (8th Cir. 1999)(internal quotations and citation omitted)). See also United States v. Burke, 999 F.2d 596, 599 (1st Cir. 1993)("[t]he standard of probable cause requires a probability, not a prima facie showing, of criminal

2

activity.'").

"'The standard applied in determining the sufficiency of an affidavit is a "totality of the circumstances" test.'" Syphers, 426 F.3d at 465 (quoting Garcia, 983 F.2d at 1167 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "'"[S]earch warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided."'" Syphers, 426 F.3d at 465 (quoting Baldyga, 233 F.3d at 683 (quoting United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986)). See also Maryland v. Pringle, 540 U.S. 366, 370 (2003)("[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (internal quotations and citation omitted). The court "'is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts.'" Falon, 959 F.2d at 1147 (quoting United States v. Hershenow, 680 F.2d 847, 852 (1st Cir. 1982)). In addition, "circumstantial evidence alone may establish probable cause." United States v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992).

In reviewing the affidavit supporting an application for a search warrant, the First Circuit gives "significant deference to the magistrate judge's initial evaluation." United States v.

3

Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005). The First Circuit reverses "only if we see no `substantial basis' for concluding that probable cause existed." Id. at 48 (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999).

More than enough probable cause existed to search defendant Serrazina's house for all of the items listed in Attachment A. As an initial matter, Magistrate Judge Neiman reviewed and found that probable cause existed to search for and seize all of the items listed in Attachment A. Therefore, First Circuit law requires this court to give substantial deference to his finding.

A fundamental flaw in defendant Serrazina's argument is her concession of the existence of "ample evidence of wallpapering and painting at the Serrazina residence, as well as her receipt of a refrigerator," and of "probable cause to search her residence for a briefcase." See Motion, pgs. 5 n.3 and 7. At a minimum, therefore, defendant Serrazina has conceded that the federal agents were at her residence lawfully and had the right to look for and seize evidence relating to those items.

This means that defendant Serrazina has conceded that any evidence seized from the house that relates to wallpapering, painting, the receipt of a refrigerator and the briefcase were lawfully seized. Therefore, documentary evidence such as invoices, receipts, packing slips, or handwritten notes, and physical evidence such as paint/stain samples, paint/stain can

4

labels, wallpaper, or wallpaper remnants, and any other similar types of evidentiary items are properly admissible.

Moreover, defendant Serrazina's concession that federal agents were at her residence lawfully and had the right to look for and seize evidence relating to wallpapering, painting, the receipt of a refrigerator and the briefcase also means any photographs of the interior of her residence are properly admissible for several reasons. First, since the agents were at defendant Serrazina's residence lawfully, the photographs are admissible as evidence of their observations. The agents had the right to search throughout her residence for the above-mentioned items, and therefore, can properly testify about their observations. Photographs are simply evidence of those observations. Second, any photographs of paint, paint cans, paint labels, wallpaper, wallpaper remanents, appliances and other any similar types of photographs are properly admissible as evidence of lawfully seized items.[1]

---

[1] The photographs are also properly admissible under the inevitable discovery rule. As Exhibit A, the Affidavit of Special Agent Hedges attests, the FBI as a policy take entrance and exit photographs at the time of a search warrant to protect against civil claims. The practice of taking entrance and exit photographs satisfies the three elements of the "inevitable discovery" doctrine: "first, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections." United States v. Almeida, 434 F.3d 25 (1st Cir. 2006).

Defendant Serrazina argues that because the entire search warrant was overly broad, then all of the evidence seized must be suppressed even if probable cause exists to seize some of the evidence. This "all or nothing" approach, however, is neither the law nor the remedy. "The remedy in the case of a seizure that casts its net too broadly is, as we held in United States v. Riggs, 690 F.2d 298, 300 (1st Cir. 1982), not blanket suppression but partial suppression." United States v. Falon, 959 F.2d 1143, 1149 (1st Cir. 1992)(citations omitted). Even when many items have been improperly seized, this "'does not alone render the whole search invalid and require suppression and return of all documents seized.'" United States v. Hamie, 165 F.3d 80, 84 (1st Cir. 1999)(quoting United States v. Young, 877 F.2d 1099, 1105 (1st Cir. 1989)). Having conceded that probable cause existed to seize certain items, defendant Serrazina must acknowledge that the remedy is partial suppression, not blanket suppression.

Notwithstanding the above argument, a fair, common sense reading of the affidavit does not warrant either partial suppression or blanket suppression. A review of defendant Serrazina's motion reveals that she essentially asks this court to review the affidavit in a manner completely contrary to what the First Circuit commands: a hypertechnical review rather than a fair, common sense review based upon the totality of

circumstances. The best example of defendant Serrazina's hypertechnical review is her singular focus upon Paragraphs 22 and 28A through 28D to the exclusion of all of the remaining paragraphs in the affidavit. <u>See</u> <u>Motion</u>, pgs. 5-7

A common sense and realistic reading of the affidavit illustrates that Paragraphs 8 through 22 outlines an enduring, pervasive, systematic pattern of fraud used to pay for home improvements at the residences of not only Asselin, Sr., but also his children. Indeed, Paragraphs 8 through 22 specifically so state at various occasions in the affidavit as follows:

-- CW-1 had personal knowledge of the use of "SHA employees and SHA funds to <u>construct and/or pay for home improvements to his residence and his children's residences since 1987</u>." Affidavit, pg. 6, ¶ 9 (emphasis added);

-- CW-1 "stated that <u>whenever one of the children wanted or needed work done to their homes, the procedure was</u> to place a note specifying the particular work that needed to be done in the basket, and then Asselin, Sr. would take care of the request." <u>Id</u>. (emphasis added);

-- "CW-1 knew about Asselin, Sr. using SHA resources to complete and pay for personal home improvement through <u>direct observations and personal conversations with various Asselin family members</u>." <u>Id</u>. (emphasis added);

-- "CW-2 stated that CW-2 has personal knowledge that Asselin, Sr. has been using SHA employees and SHA funds <u>to construct and/or pay for home improvements since approximately 1994 or 1995</u>." <u>Id</u>. at ¶ 10 (emphasis added);

-- "CW-2 stated that <u>the typical procedure</u> was for Asselin, Sr. to call or visit CW-2 at CW-2's office at SHA and either orally or in writing

7

>    instruct CW-2 to purchase and bill certain home
>    improvement items to SHA." <u>Id</u>. at ¶ 10 (emphasis
>    added);
>
> -- "CW-3 stated that CW-3 has personal knowledge that
>    Asselin, Sr. has been using SHA employees and SHA
>    funds <u>to construct and/or pay for home
>    improvements since approximately the late 1980s</u>."
>    <u>Id</u>. at ¶ 14 (emphasis added);
>
> -- "CW-3 also had personal knowledge that Asselin,
>    Sr. used CW-4, another SHA employee, to construct
>    and/or pay for home improvements at Asselin, Sr.'s
>    personal residence, <u>his children's personal
>    residences</u>, and the Asselin family Cape Cod
>    vacation home." <u>Id</u>. at ¶ 15 (emphasis added);
>
> -- CW-5, an employee at SHA since 1989, had "personal
>    knowledge that Asselin, Sr. has used SHA funds and
>    SHA labor for his personal residence, the Chatham
>    vacation home, and <u>his children's residences</u>."
>    <u>Id</u>. at ¶ 18 (emphasis added);
>
> -- "CW-8 stated that in approximately 1998, CW-8
>    assumed the responsibilities of supervising the
>    SHA painting crew. CW-8 was aware that two
>    members of the SHA painting crew -- CW-3 and CW-4
>    -- <u>performed personal work for Asselin, Sr. at the
>    personal residences of Asselin, Sr., James
>    Asselin, Asselin, Jr., Joseph Asselin, Maria
>    Serrazina, and Chris Asselin</u> as well as the
>    Chatham vacation home." <u>Id</u>. at ¶ 22 (emphasis
>    added).

A fair reading of just Paragraphs 8 through 22 evidenced a fraud spanning approximately fifteen years and including a wide variety of misappropriated items, ranging from not only paint and wallpaper, but also lighting fixtures, power tools, vacuum cleaners and other items. The examples cited clearly indicated that they were illustrative, not exhaustive. <u>See</u> <u>e.g.</u> Affidavit, pg. 7, ¶ 10 (CW-2 stating that "handwritten notes did not

8

represent all requests"); pg. 8, ¶ 15 (CW-3 stating that CW-3 "falsely punched CW-4's timecard more than 100 times"); pg. 12, ¶ 21 (CW-8 stating that "it was common knowledge that the Riverview crew performed personal work for Asselin, Sr. on SHA time"). In addition, CWs 1 through 3 specifically stated that their personal knowledge included the "construction" of home improvements at the childrens' residences without limitation. The "first-hand account of possible criminal activity" by CWs 1 through 8 was the "hallmark of a credible tip" and worthy of significant consideration by the magistrate judge. United States v. Greenburg, 410 F.3d 63, 67 (1st Cir. 2005)(citing Illinois v. Gates, 462 U.S. 213, 234 (1983).

 Therefore, based solely upon Paragraphs 8 through 22, given the lengthy time span of the fraud and the breadth of the fraud, it was reasonable for the magistrate judge to infer that CWs 1 through 8 could not delimit each and every instance of theft and fraud that occurred over the past fifteen years. Moreover, it was equally reasonable for the magistrate judge to infer that, given the pervasive and systematic nature of the fraud, it was probable that evidence of the fruits of the fraud would extend beyond the general examples cited by CWs 1 through 8.

 Paragraphs 23 through 28 re-inforced not only the extent and pervasiveness of the fraud, but also established the nexus between the fraud and each location to be searched. For example,

Paragraphs 23A through E detailed the evidence of the fruits of the fraud at Asselin, Sr.'s residence as follows: a granite countertop, a granite table, a new refrigerator, a new stove, a new dishwasher, painting, wallpapering, new rugs, lawn mowing, plumbing work, and a concrete grill pad. Affidavit, pgs. 14-15. Paragraphs 24A through D described new carpeting from a SHA vendor, painting, and ten truckloads of cement at the Cape Cod residence. Id. at 15-16.  Paragraphs 25A through E outlined the evidence of the fruits of the fraud at James Asselin's residence as follows:  new woodwork, new drywall, a new bath, electrical work, tile, painting, wallpapering, new windows, a new roof, new rugs, a water heater, a lawnmower, a snowblower, and the use of scaffolding.

Although Paragraphs 28A through 28D only mention wallpapering, painting and a new refrigerator at defendant Serrazina's residence, it was reasonable and probable for the magistrate judge to infer that her house would contain evidence of SHA fraud and bribery to an extent and nature similar to her siblings.  The affidavit contained no information, nor does any information exist, to suggest that her parents treated defendant Serrazina any differently than her siblings.  Given the span of time and breadth of the fraud, it was likely and probable that defendant Serrazina would have benefitted from the SHA fraud and bribery in a manner and to an extent similar to her siblings.

10

Based upon the totality of circumstances, it was reasonable for the magistrate judge to believe that it was probable that all of the items listed in Attachment A would be located in defendant Serrazina's house.

Finally, the fact that Asselin, Sr. concealed $240,000.00 in bribe proceeds at defendant Serrazina's house further cemented the inference that defendant Serrazina and her residence were firmly entrenched in the fraud and bribery schemes. The fact that Asselin, Sr. entrusted defendant Serrazina to agree to conceal $240,000.00 in bribe proceeds certainly showed that Asselin, Sr. treated his daughter no differently when it came to her involvement in the criminal activity.

Defendant Serrazina claims that "[i]f there had been additional home improvement projects at the Serrazina residence, they certainly would have been included in the affidavit." See Motion, pg. 10. Not so. "`[P]robable cause only requires a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Syphers, 426 F.3d at 465 (Garcia, 197 F.3d at 1227). There is no requirement under the law to delineate each and every instance of fraud or possible fraud that may have been found at defendant Serrazina's residence.

B. Particularity

A warrant must provide enough information "to guide and

11

control the agent's judgment in selecting what to take" and must not be so broad to "include items that should not be seized." Upham, 168 F.3d at 535.  A search warrant is not sufficiently particular if "'nothing is left to the discretion of the officer executing the warrant.'" Fuccillo, 808 F.2d at 175 (quoting Stanford v. Texas, 379 U.S. 476, 485, 85 S.Ct. 506 [1965] ).

"General descriptions in warrants, however, have been accepted when the surrounding circumstances render it reasonable." United States v. Morris, 977 F.2d 677, 681 (1st Cir. 1992)(citing United States v. Cortellesso, 601 F.2d 28 (1st Cir. 1979)(general description upheld due to practical impossibility of precise description). See also United States v. Fuccillo, 808 F.2d 173, 176 (1st Cir. 1987)(stating that "[w]e recognize, however, that the overriding principle of the Fourth Amendment is one of reasonableness and on occasion have accepted general descriptions in warrants, holding that such descriptions are not always constitutionally infirm.").

"The degree of specificity required will depend on the circumstances of the case and on the type of items involved." United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999).  "A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time that the warrant is issued." Id. See also Upham, 168 F.3d at 535 (holding that "[a]s a practical matter, the seizure

12

and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."); United States v. Vitek Supply Corp., 144 F.3d 476, 481 (7th Cir. 1998)(stating that "a warrant must explicate the items to be seized only as precisely as the circumstances and the nature of the alleged crime permit.").

The search warrant in this case properly guided the searching agents' judgment in selecting what evidence to seize and what evidence not to seize. Category A was sufficiently particular because the phrase "relating to . . .home improvement projects and/or materials" confined the agents' search solely to such documents. See United States v. Bucuvalas, 970 F.2d 937, 942 (1st Cir. 1992)(holding that search constraints in second clause rendered warrant sufficiently particular). Wallpaper and paint, of course, fall within the definition of "home improvement projects and/or materials."

This limiting phrase meant that the agents knew that they could not seize entire classes of unrelated personal documents, such as correspondence, address books, employment records, health records, education records, and other types of personal papers that would not have been reasonably related to home improvement projects.

Even within the subset of documents specifically identified

13

as "contracts, estimates, permits, receipts, invoices, delivery tickets, packing slips and handwritten notes," Category A sufficiently limited the agents' judgment to only home improvement related documents. Thus, the agents knew they could not seize, for example, grocery bills, doctor bills, automobile repair bills, automobile insurance invoices, homeowners' insurance invoices, and the like. The affidavit sufficiently established that probable cause existed to seize documents related to "home improvement projects and/or materials." Thus, Category A did not permit the agents to engage in an "all records search."

Moreover, the facts and circumstances of the criminal activity prevented the agents from using a phrase more specific than "home improvement projects and/or materials." As the Affidavit made clear, Asselin, Sr. billed the purloined SHA items and labor to SHA. See Affidavit, pg. 7, ¶s 10, 11. Asselin, Sr. often had SHA employees falsely punch their SHA timecards to reflect work at SHA when in fact they had been instructed to perform personal work at the various personal residences of the Asselin family. See Affidavit, pg. 9, ¶ 15; pg. 10, ¶ 17. Many times SHA workers performing personal work for Asselin, Sr. billed their hours to a particular SHA project. See Affidavit, pg. 12-13, ¶ 22. Asselin, Sr. and his children also received goods and materials from SHA vendors. See e.g. Affidavit, pg. 15,

14

¶ 24A; pg. 17, ¶ 25A; pg. 19, ¶ 26A; pg. 22, 27B.  Given the manner in which the crimes had been committed, investigators had to trace any goods, materials and/or labor obtained from SHA or received from a SHA vendor back to its source to determine whether or not it had been illegally obtained.

This meant that the illegal character or nature of a particular home improvement receipt, invoice or delivery ticket found at defendant Serrazina's residence may not have been readily distinguishable on its face.  Only by tracing the receipt, invoice or delivery ticket back to its source and determining how the item had been paid would the investigators know if the document evidenced illegal activity. See United States v. Beckett, 321 F.3d 26, 33 (1st Cir. 2003)(holding that "[w]e now require only that there is reason to believe that the particular evidence to be seized `will aid in a particular apprehension or conviction.'" (quoting Warden v. Hayden, 387 U.S. 294, 301, 307 (1967)).  Therefore, the general description used in Category A was perfectly appropriate given the facts and circumstances of the crimes, and because it was "easily administered based on objective criteria." See Upham, 168 F.3d at 535. See also Vitek Supply Corp., 144 F.3d at 481 (general description sufficiently particular where no "readily-discernable characteristic that would have enabled the agents to identify the illegal substances.").

Category B made explicit what was implicit: that in searching for documentary evidence of home improvement projects and/or materials, such as wallpaper and paint, the agents had a right to photograph the rooms as they entered and seize samples and remants of home improvement projects. The photographs of paint or wallpaper on the walls or paint cans, for example, memorialized evidence of the fruit of the crimes. Seizure of paint can lids, wallpaper remnants or tile remnants was appropriate given that the illegal character of the remnants' may not have been readily discernible until traced back to their source. Once again, Category B sufficiently limited the agents' judgment to only home improvement related items.

Category C was sufficiently particular because the phrase "relating to the availability of financial resources, or lack thereof, for personal expenditure on and/or re-imbursement of home improvement projects and/or materials" confined the agents' search solely to such documents. This limiting phrase meant that the agents knew that the financial records that they seized had to relate to defendant Serrazina's ability to spend money on home improvement projects and/or materials. This informed the agents that, for example, custodial accounts, unliquidated certificates of deposit, treasury bonds, or trust accounts could not be seized.

Although the class of financial documents was broad, it was

16

nonetheless relevant to show that defendant Serrazina did not pay for or receive re-imbursement for certain home improvement projects and/or materials. In other words, defendant Serrazina's argument "overlooks the fact that the investigation in this case sought to prove a negative." <u>United States v. Ninety-Two Thousand Four Hundred Twenty-Two</u>, 307 F.3d 137, 150 (3rd Cir. 2002) (permitting seizure of legal and illegal sales to show that defendant "had *not* engaged in legitimate sales to the sham groceries). In this case, the investigators had to seize the afore-mentioned financial records to show that defendant Serrazina had <u>not</u> paid for or received re-imbursement for certain home improvement projects or materials in order to prove their illegal character. Therefore, like Category A, Category C was not an "all records" search.

Category D similarly made it clear that the agents had the right to enter, inventory, and photograph various appliances and tools as they searched for SHA bar code numbers or other identifying information on such items. The photographs and recording of serial numbers is nothing more than a memorializa-ion of their observations, which the searching agents would have been entitled to testify about anyway. Category D limits the agents' judgment to only those types of "furnishings, appliances and/or tools" that bear identifying information such as SHA bar code numbers or serial numbers. This meant that the agents knew

17